**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 24 2001**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

ROBERT TAFOYA,

        Petitioner-Appellant,

v.

ROBERT TANSY, Warden, and
ATTORNEY GENERAL FOR
THE STATE OF NEW MEXICO,

        Respondents-Appellees.

No. 00-2049
(D.C. No. CIV-97-63-JC)
(D. N.M.)

ORDER AND JUDGMENT *

Before **TACHA** , Chief Judge, **EBEL** , and **BRISCOE** , Circuit Judges.


After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is

therefore ordered submitted without oral argument.

---

*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner Robert Tafoya appeals from the district court's dismissal of his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. This court previously granted a certificate of appealability (COA) pursuant to § 2253(c) on several issues. On further consideration, we agree with the district court that petitioner has failed to state a claim with regard to these issues. We deny petitioner's request for a COA with respect to the remaining issues he raises on appeal, and therefore affirm the district court's dismissal of the petition.

In 1985, petitioner was convicted of a number of counts of aggravated burglary, aggravated battery, kidnapping, criminal sexual penetration, and criminal sexual contact with a minor, and was sentenced to 101 years in prison. *State v. Tafoya*, 729 P.2d 1371 (N.M. Ct. App. 1986) (*Tafoya I*), *vacated in part*, 487 U.S. 1229 (1988), *reaffirmed*, 765 P.2d 1183 (N.M. Ct. App. 1988) (*Tafoya II*). In January 1997, petitioner brought this action seeking habeas corpus relief pursuant to 28 U.S.C. § 2254 and challenging his convictions on a number of grounds. The district court rejected his initial petition because it was on the wrong form. Petitioner filed an amended petition in which he attempted to assert claims apparently by reference to his pleadings in state court proceedings. Respondents answered and moved to dismiss the petition on the grounds that most claims were procedurally defaulted and the remaining claims were apparently without merit. Adopting the proposed findings and recommended disposition

of the magistrate judge, the district court denied respondents' motion to dismiss. The court also ordered petitioner to submit another amended petition setting forth each claim for relief rather than incorporating by reference claims asserted in state pleadings.

Petitioner filed a second amended petition. Adopting another set of proposed findings and recommended disposition prepared sua sponte by the magistrate judge, the district court dismissed the petition. Petitioner filed a notice of appeal and applied for a certificate of appealability pursuant to 28 U.S.C. § 2253(c) on what he identifies as seventeen separate issues.

Respondents contend that petitioner has procedurally defaulted most if not all of the issues he raises because he failed to raise them in his certiorari petition to the New Mexico Supreme Court from the denial of his first state habeas corpus petition. When respondents raised this issue in the district court, the magistrate judge recommended that it be rejected because it was unclear what issues the New Mexico Supreme Court considered. Respondents did not object to this recommendation, and we therefore consider the issue waived. *See Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995). [1]

---

[1] In any event, while the state courts may have been able to reject petitioner's claims on procedural default grounds, they never explicitly did so. *See Jackson v. Shanks*, 143 F.3d 1313, 1319 (10th Cir. 1998) ("We are not inclined to rely on a state procedural rule that the New Mexico courts did not rely upon."). Moreover,

(continued...)

The district court effectively determined that petitioner had failed to state claims on which relief could be granted. *See* Fed. R. Civ. P. 12(b)(6). With respect to the issues on which we have granted a COA, our review is therefore de novo. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999). Because petitioner filed his petition on January 17, 1997, our review is ultimately governed by the standard contained in § 2254(d), as modified by the Antiterrorism and Effective Death Penalty Act. That standard provides, applicable to this situation, that petitioner is not entitled to relief unless the state court unreasonably applied clearly established federal law, as determined by the Supreme Court. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). We note, however, that we do not need to apply that deferential standard in this case because petitioner has not identified any violations of federal law.

---

[1](...continued)
the procedural default issue in this case is complicated by petitioner's numerous, lengthy, and confusing state court filings and by the lack of specificity in the state court orders denying relief, and the last state court decision rejecting petitioner's claims could be read to rely in large part on federal grounds. Though we need not decide the issue, it appears petitioner has not procedurally defaulted his claims. *See Klein v. Neal*, 45 F.3d 1395, 1398-99 (10th Cir. 1995).

*I. CLAIMS ON WHICH A CERTIFICATE OF APPEALABILITY WAS GRANTED*

We previously granted petitioner's request for a certificate of appealability on six issues involving petitioner's claims of ineffective trial or appellate counsel. To establish a claim of ineffective assistance of counsel, petitioner must show both that his counsel's representation was deficient, measured against an objective standard of reasonableness, and that there is a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 688, 694 (1984). Petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (quotation omitted). Courts are instructed to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and that counsel's conduct was not the result of error or omission but derived instead from trial strategy. *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* A court may address the performance and prejudice components in any order and need not address both if a petitioner fails to make the requisite showing for one. *See Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). Petitioner's specific allegations of his trial and appellate counsel's ineffective performance are discussed below.

*A.  Failure to move to suppress statements made to police*

Petitioner contends that after he was arrested, police continued to question him even though he had asked for an attorney, and that incriminating statements he made during this interrogation were admitted at trial.  He contends that his trial counsel was ineffective by either failing to move to suppress these statements or withdrawing the motion to suppress he did file.

This claim fails for at least two reasons.  First, the record contains evidence--signed waivers by petitioner and testimony by the arresting officer--indicating that petitioner waived his right to have his attorney present before talking to the police.  Petitioner has not shown that these waivers were invalid, and thus, that any motion to suppress would likely have succeeded.  Second, counsel's strategy was to show that petitioner's cooperation with the police, including talking to the police without his counsel present, demonstrated that he had nothing to hide and was innocent of the crimes charged.  Petitioner has not argued that this cooperation strategy was ill-advised, and, since his statements were not particularly damaging, we see no deficiency in counsel's performance.

*B.  Failure to move to suppress indictment*

Petitioner contends that a detective involved in the investigation of his case was improperly present at the grand jury proceedings, in violation of

N.M. Stat. Ann. §§ 31-6-4 and 31-6-7, and that counsel should not have withdrawn a motion to suppress the indictment on this basis.

Respondents contend, and the record supports, that counsel withdrew the motion because he learned that the detective was not improperly in the grand jury room; she was there permissibly only to give testimony. Other than his bare allegation, petitioner has not indicated that there is any evidence anyone was improperly present during the grand jury proceedings. Petitioner has thus not shown how his counsel could have been ineffective in withdrawing the motion.

*C. Failure to employ fingerprint expert*

Petitioner claims his trial counsel was ineffective because he failed to counter the prosecution's evidence with expert testimony regarding fingerprint processing and evaluation. Petitioner contends that counsel should have presented expert testimony supporting two theories: (1) that police could have planted his fingerprints, which they had from a prior arrest, at the crime scenes; and (2) that the fingerprints found at the crime scenes were not his. With respect to his first theory, petitioner contends counsel should have called an expert to testify that it would have been possible to tamper with his fingerprints. He argues that an expert could explain that, in contrast to the technique used in his case, the Federal Bureau of Investigation takes photographs of fingerprints on the surfaces from which the prints are lifted, which he contends shows that the prints were not

planted. As to his second theory, petitioner contends counsel should have used an expert to rebut the prosecution's expert testimony that the prints found at the scenes were his by showing that the prosecution's expert did not identify his prints in accordance with FBI standards.

The evidence presented did allow counsel to argue both of these theories at trial. While the evidence petitioner claims counsel should have presented could have bolstered his arguments, it is not significant enough to create a reasonable probability of a different trial result. The weakness in petitioner's tampering theory is that there was no evidence that police did in fact plant his prints, and his proposed evidence would not change that situation. Moreover, his own "expert" indicated that while the FBI generally photographs fingerprints, most police departments do not, and this expert did not suggest that the failure to photograph somehow demonstrates tampering. As to fingerprint identification, the testimony of the prosecution's expert was very general, but he did give his opinion that petitioner's fingerprints matched those taken from the crime scenes. Counsel was able to point out the weakness in the method of comparison the expert used to match the fingerprints. A fingerprint expert for the defense possibly could have aided counsel's argument. Critically, however, petitioner does not contend that an expert would have testified that the fingerprints did not match, and we

conclude petitioner has not shown the requisite prejudice from counsel's performance.

*D. Failure to present character evidence*

Petitioner contends that his counsel was ineffective by failing to present any evidence of his good character. He argues that counsel should have presented character evidence showing that through work and babysitting, he was often alone with children and did not molest them. Because character is not an element of petitioner's crimes, he may not prove character through such specific instances of conduct, *State v. Bazan*, 561 P.2d 482, 487 (N.M. Ct. App. 1977), and his proposed evidence would not have been admissible.

Petitioner also contends counsel should have presented general evidence of his good character, and that such evidence would have been admissible. Admission of such evidence, however, would have allowed cross-examination regarding prior charges against him for sexual offenses. *Id.* at 486; *cf. United States v. McHorse*, 179 F.3d 889, 901-02 (10th Cir. 1999), *cert. denied*, 120 S. Ct. 358 (1999). Although there had been some passing mention of these prior charges during the trial, cross-examination regarding character would have emphasized them for the jury. Given this risk, we cannot say counsel was ineffective in not presenting evidence of petitioner's character.

*E. Conflict of interest--trial counsel*

Petitioner claims that several of his family members witnessed the state's fingerprint expert pass counsel an envelope possibly containing money at a lunch break during trial. He contends that the expert was bribing counsel to allow the expert to distort the fingerprint evidence he presented. Petitioner alleges a separate form of conflict due to counsel's simultaneous defense of another individual charged with similar crimes. He contends that counsel should have investigated the other individual, who petitioner contends probably committed the crimes for which he was convicted.

To prove that counsel was ineffective due to a conflict of interest, petitioner must show an actual conflict of interest that adversely affected counsel's performance. *United States v. Alvarez*, 137 F.3d 1249, 1251 (10th Cir. 1998). "To demonstrate an actual conflict of interest, the petitioner must be able to point to specific instances in the record which suggest an impairment or compromise of his interests for the benefit of another party." *Id.* at 1252 (quotation omitted).

We agree with respondents that the passing of an envelope between the expert and counsel does not indicate bribery, and that petitioner's contention is inherently unbelievable. With respect to his second conflict-of-interest claim, petitioner has provided no proof that the other individual committed the crimes

for which he was convicted. Mere speculation that counsel's investigation of the other individual would have demonstrated petitioner's innocence is insufficient to show that he was prejudiced by counsel's conduct. *See United States v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995).

*F. Conflict of interest--appellate counsel*

Petitioner also claims one of his appellate counsel suffered from a conflict of interest because counsel also represented one of the child victims as guardian ad litem. [2] He further contends that because of this conflict, counsel filed untimely a brief in the New Mexico Court of Appeals challenging the trial court's denial of his motion for a new trial. Because of the untimely filing, the appeals court refused to consider the matter.

Closer examination of the issue, however, reveals that petitioner's counsel, not the alleged partner with the conflicting interests, was responsible for the late filing. The only document the alleged partner signed was a memorandum in support of a motion for reconsideration, and the court considered, but rejected, the arguments contained in this memorandum. This claim thus fails.

---

[2] This counsel allegedly was the partner of petitioner's primary appellate counsel and represented petitioner when primary counsel was unavailable. Although respondents have provided affidavits on appeal indicating the two counsel were not partners, we do not consider that evidence because it was not presented to the district court. *See Boone v. Carlsbad Bancorporation, Inc.*, 972 F.2d 1545, 1549 n.1 (10th Cir. 1992).

-11-

## II. CLAIMS ON WHICH COA HAS NOT BEEN GRANTED

Petitioner has asserted a variety of other claims for which we conclude he has not made a substantial showing of the denial of a constitutional right, and thus is not entitled to a COA. *See* § 2253(c)(2). Our reasons for rejecting these claims are discussed below.

### A. *Failure to be present at police lineups*

Petitioner contends that his counsel was ineffective because he abandoned him at one or two police lineups at which he apparently was identified. It is difficult to determine what petitioner claims his counsel should have done at these lineups, but it is clear that he has not identified how his counsel's performance prejudiced him to the extent required by *Strickland*. Moreover, we note that on direct appeal, the court rejected on the merits petitioner's claim that the lineup identification was unduly suggestive, *Tafoya I*, 729 P.2d at 1378, thus indicating that counsel did move to suppress the identification and thereby preserve the issue for appeal.

### B. *Failure to move to excuse jurors*

Petitioner contends that his counsel was ineffective for failing to move to excuse jurors who he contends were biased against him. Counsel may be ineffective for failing to attempt to remove from the jury an individual who has been established on voir dire to be biased. *Hale v. Gibson*, 227 F.3d 1298, 1319

(10th Cir. 2000). To show that a juror was biased, petitioner "must show more than that the juror had a preconceived notion of guilt; he must show that the juror had such a fixed opinion that he or she could not judge impartially." *Id.* at 1320.

Petitioner contends counsel should have tried to remove a juror who read a newspaper article regarding petitioner and who also knew the grandparents of one of the victims, and a juror who indicated she was relieved when she heard that the alleged perpetrator of the crimes had been apprehended. Both of these jurors, however, stated that they could still be impartial despite these alleged biases, and counsel was therefore not ineffective for failing to try to remove them. *See id.* Petitioner also contends that jurors may have been biased because they may have read the newspaper article, because they may have been influenced by comments by other jurors, or because they may have been racially biased. Mere speculation regarding the possibility of inappropriate juror bias is not sufficient to meet the prejudice prong under *Strickland*. *See id.* Finally, petitioner complains of a juror who allegedly fell asleep during trial. Counsel brought this to the court's attention, and petitioner fails to explain how the court's decision not to excuse the juror can be attributed to any deficient performance by counsel.

*C. Failure to present expert testimony*

Petitioner claims his trial counsel was ineffective because he failed to counter the prosecution's evidence with expert testimony regarding serology, DNA, and the psychological effect of testifying at trial on the child victims. Petitioner's claims rest on his speculation that such experts would have aided his defense. He does not indicate what the experts' testimony would have been, and speculation does not satisfy his obligation to demonstrate a reasonable probability that the outcome would have been different, *Boone*, 62 F.3d at 327, nor does it warrant an evidentiary hearing. *See also Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir. 1997) ("Speculation about what an expert could have said is not enough to establish prejudice."). [3]

---

[3] Petitioner's claim that counsel should have employed experts regarding the psychological effect of testifying at trial on child victims relates to his claim that he was denied his Sixth Amendment confrontation rights with respect to the child victims who the trial court allowed to testify through the videotape of their depositions at which petitioner was present but hidden from the victims. On remand from the United States Supreme Court, the New Mexico Court of Appeals held that this procedure did not violate petitioner's confrontation rights in light of *Coy v. Iowa*, 487 U.S. 1012 (1988). *Tafoya II*, 765 P.2d at 1185-86. To the extent petitioner is reasserting his *Coy* claim as a claim separate from his ineffective counsel claim, he has failed to demonstrate that *Tafoya II* resulted in a decision that was contrary to or an unreasonable application of federal law or that it was based on an unreasonable determination of the facts in light of the evidence presented. *See* § 2254(d).

*D. Failure to move for change of venue*

Petitioner contends that his counsel was ineffective because he failed to move for a change of venue due to prejudicial pretrial publicity that petitioner contends denied him a fair trial. To establish ineffective assistance in this regard, petitioner must show, at a minimum, that the trial court would have or should have granted a change of venue motion. This, in turn, requires him to show actual or presumed prejudice on the part of jurors. *See Hale*, 227 F.3d at 1332; *Meeks v. Moore*, 216 F.3d 951, 961 (11th Cir. 2000), *cert. denied*, 121 S. Ct. 1114 (2001). Actual prejudice requires showing that one or more jurors believed before trial that petitioner was guilty and that they could not set these pre-formed opinions aside at trial. *Id.* Presumed prejudice requires showing that "an irrepressibly hostile attitude pervaded the community." *Hale*, 227 F.3d at 1332 (quotation omitted). Petitioner does not allege actual prejudice, and his allegations of presumed prejudice, based on pretrial newspaper articles, do not approach the high standard necessary to warrant a change in venue. *See id.* ("Simply showing that all the potential jurors knew about the case and that there was extensive pretrial publicity will not suffice to demonstrate that an irrepressibly hostile attitude pervaded the community.") (quotation omitted).

*E. Counsel's withdrawals of motions*

To the extent we understand this claim, it is addressed under petitioner's substantive claims of ineffective assistance of counsel.

*F. Ineffective assistance of appellate counsel*

Petitioner contends that his appellate counsel was ineffective for failing to raise a number of issues on direct appeal. An appellate counsel's performance is considered deficient and prejudicial to the defendant only if counsel fails to argue a "dead-bang winner;" that is, an issue which was obvious from the trial record and which would have resulted in reversal on appeal. *United States v. Cook*, 45 F.3d 388, 395 (10th Cir. 1995). Petitioner has failed to identify any such dead-bang winners.

*G. Prejudicial joinder of charges*

Petitioner contends that the charges involving the various victims were improperly joined. However, his contentions regarding this claim are too vague for this court to consider it.

*H. Denial of right to be present at critical stages of proceedings*

Petitioner contends that he was denied his constitutional right to be present at various critical stages of the proceedings against him. These alleged critical stages were in-chambers meetings with jurors and other in-chambers meetings involving evidentiary matters, witnesses' discussions of the case outside of court,

and a motion for a mistrial. Petitioner's counsel was apparently present during all of these meetings, and counsel indicated to the court that petitioner waived any right he had to be present at these meetings.

A defendant has a due process right to be present at trial "'whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.'" *Larson v. Tansy*, 911 F.2d 392, 394 (10th Cir. 1990) (quoting *Snyder v. Massachusetts*, 291 U.S. 97, 105-06 (1934)). But due process does not require the defendant to be present "when [his] presence would be useless, or the benefit but a shadow." *Id.* (quoting *Snyder*, 291 U.S. at 106-07). We have held that a defendant has a right to be present in the courtroom during the critical stages of instructing of the jury, closing arguments, and the rendering of the verdict, *id.* at 394, but we have not identified the situations asserted by petitioner as critical stages. *Cf. United States v. Bertoli*, 40 F.3d 1384, 1397 (3d Cir. 1994) ( "It is clear that there is no *constitutional* right for a defendant to be present at a conference in chambers concerning dismissal of a juror.") (quotation omitted); *United States v. Shukitis*, 877 F.2d 1322, 1329-30 (7th Cir. 1989) (holding defendant not constitutionally required to be present at in-chambers conference, attended by counsel, to discuss witnesses' violation of witness-separation order). Counsel was present during these situations, and petitioner has not indicated how his presence could have aided his

defense or how his absence prejudiced him. *See United States v. Gomez*, 67 F.3d 1515, 1528 (10th Cir. 1995) (noting that violation of right to be present is subject to harmless error analysis); *United States v. Rodriguez*, 67 F.3d 1312, 1316 (7th Cir. 1995) (holding any error regarding right to be present harmless "if the issue is not one on which counsel would be likely to consult the defendant, or if it is not one for which the defendant, if consulted, would be likely to have an answer that would sway the judge").

*I. Denial of right to speedy trial*

Petitioner contends that a five-month pretrial delay caused by his appeal of the trial court's order that he turn over results of a polygraph test to the prosecution violated his right to a speedy trial.

> A Sixth Amendment speedy trial claim is assessed by balancing the length of the delay, the reason for the delay, whether the defendant asserted his right to a speedy trial, and whether the delay prejudiced the defendant. While no single factor is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial, only if the period of delay is presumptively prejudicial need we inquire into the other factors.

*United States v. Dirden*, 38 F.3d 1131, 1137 (10th Cir. 1994) (quotations and citations omitted). The total time between petitioner's arraignment and trial was less than nine months. Even if we found the nine-month delay presumptively prejudicial, *cf. id.* at 1138 (holding seven-and-one-half-month delay not presumptively prejudicial), because the period of delay petitioner complains

-18-

about was caused by his interlocutory challenge to a trial court ruling and he has identified no ensuing prejudice to his defense, we conclude his right to a speedy trial was not violated.

*J. Judicial Bias*

To succeed on his claim of judicial bias, petitioner must demonstrate either that the trial judge was actually biased against him or that "circumstances were such that an appearance of bias created a conclusive presumption of actual bias." *Fero v. Kerby*, 39 F.3d 1462, 1478 (10th Cir. 1994). He contends that the trial judge was actually biased against him because the judge had stated that he thought petitioner was guilty of earlier, similar crimes of which petitioner had been acquitted. Even if that allegation were true, it does not demonstrate impermissible bias at his later trial. *See Liteky v. United States*, 510 U.S. 540, 551, 555 (1994) (interpreting federal recusal statute). He further contends that a number of rulings by the judge show that the judge should be presumed to have been actually biased. Adverse rulings at trial may provide grounds for appeal but do not show bias. *See id.* at 555. Finally, petitioner's speculation about the judge's political aspirations and their effect on his trial is grossly insufficient to demonstrate bias. *See United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

*K. Prosecutorial misconduct*

Petitioner contends that prosecutors engaged in misconduct at trial by referring to him in their opening statement as the "school girl rapist;" stating that "this time defendant got caught with his hand in the cookie jar;" allegedly lying to the trial judge about petitioner's position during police lineups; and noting in closing that petitioner had failed to present expert testimony rebutting the prosecution's experts. Prosecutorial misconduct warrants habeas relief only if it so infects the trial process as to make the resulting conviction a denial of due process. *Mayes v. Gibson*, 210 F.3d 1284, 1293 (10th Cir.), *cert. denied*, 121 S. Ct. 586 (2000). Petitioner has failed to demonstrate that these actions by the prosecutors rise to the level of a due process violation.

*L. Plain and fundamental errors*

Petitioner contends that the cumulative effects of the errors he has identified, even if individually harmless, amount to plain and fundamental error warranting reversal of his convictions. "Cumulative error analysis applies where there are two or more actual errors; it does not apply to the cumulative effect of non-errors." *Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998). We conclude that any errors identified by petitioner, even when taken together, did not make his trial fundamentally unfair. *See Van Woudenberg ex rel. Foor*

*v. Gibson* , 211 F.3d 560, 571 (10th Cir. 2000),      *cert. denied* , 121 S. Ct. 1117

(2001).

*III.  CONCLUSION*

Petitioner's request for a certificate of appealability on all issues on

which it was not previously granted is DENIED, and that portion of the appeal is

DISMISSED.  The remainder of the judgment of the district court is AFFIRMED.

Petitioner's motion to preserve evidence is DENIED.  The mandate shall issue

forthwith.

Entered for the Court


Mary Beck Briscoe
Circuit Judge