Calvin CAMERON, Petitioner,

v.

Thomas BIRKETT, Respondent.

No. CIV.03–40211.

United States District Court,
E.D. Michigan,
Southern Division.

Dec. 7, 2004.

---

Calvin Cameron, Eastlake, MI, Pro Se.

Brad H. Beaver, Michigan Department of Attorney General, Habeas Corpus Division, Brenda E. Turner, Michigan Department of Attorney General, Habeas Corpus Division, Lansing, MI, for Thomas Birkett, Warden, Respondent.

### ORDER ACCEPTING AND ADOPTING REPORT AND RECOMMENDATION

GADOLA, District Judge.

Before the Court is Petitioner's motion to vacate his sentence pursuant to 28 U.S.C. § 2254 and the Report and Recommendation of the Honorable Paul J. Ko-mives, United States Magistrate Judge. The Magistrate Judge recommends that this Court deny Petitioner's motion.

The Court's standard of review for a Magistrate Judge's Report and Recommendation depends upon whether a party files objections. If a party does not object to the Report and Recommendation, the Court does not need to conduct a review by any standard. *See Lardie v. Birkett,* 221 F.Supp.2d 806, 807 (E.D.Mich. 2002) (Gadola, J.). If a party does object to portions of the Report and Recommendation, the Court reviews those portions *de novo. Lardie,* 221 F.Supp.2d at 807. The Federal Rules of Civil Procedure dictate this standard of review in Rule 72(b), which states, in relevant part, that

> [t]he district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). Here, because Petitioner filed objections, this Court reviews *de novo* those portions to which an objection has been made. *See Lardie,* 221 F.Supp.2d at 807.

*De novo* review in these circumstances requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's Report and Recommendation. *See* 12 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, *Federal Practice and Procedure: Civil 2d* § 3070.2 (1997); *see also Hill v. Duriron Co.,* 656 F.2d 1208, 1215 (6th Cir.1981). The Court may supplement the record by

entertaining additional evidence, but is not required to do so. 12 Wright, *Federal Practice* § 3070.2. After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie,* 221 F.Supp.2d at 807. If the Court accepts a Report and Recommendation, the Court is not required to state with specificity what it reviewed; it is sufficient for the Court to state that it engaged in a *de novo* review of the record and adopts the Report and Recommendation. *See id.;* 12 Wright, *Federal Practice* § 3070.2.

Petitioner filed a six-page "Petitioner's Objections to Magistrate's Report and Recommendation" containing objections to the Magistrate Judge's conclusion that the identification testimony was sufficient to support the jury's determination. The Court has reviewed the Report and Recommendation to which Petitioner has objected and the underlying evidence and filings in the record. Having conducted this review under the *de novo* standard as detailed above, the Court concludes that the Magistrate Judge's reasoning and conclusions are sound.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's objections [docket entry 39] are **OVERRULED.**

**IT IS FURTHER ORDERED** that the report and recommendation [docket entry 35] is **ACCEPTED** and **ADOPTED** as the opinion of this Court and Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 [docket entry 1] is **DENIED.**

**IT IS FURTHER ORDERED** that if Petitioner desires to seek a certificate of appealability ("COA"), Petitioner may file a **MOTION** for a COA within **TWENTY-ONE (21) DAYS** of filing a Notice of Appeal and shall support this motion with an appropriate brief, both of which shall comply with the Local Rules of this Court. *See Castro v. United States,* 310 F.3d 900, 903 (6th Cir.2002) (*"We do encourage petitioners as a matter of prudence to move for a COA at their earliest opportunity so that they can exercise their right to explain their argument for issuance of a COA."* (emphasis added)). Respondent may file a response with an appropriate brief, both of which shall comply with the Local Rules, within **FOURTEEN (14) DAYS** of service of Petitioner's motion for a COA.

**SO ORDERED.**

## *REPORT AND RECOMMENDATION*

KOMIVES, United States Magistrate Judge.

## Table of Contents

I. *RECOMMENDATION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 831

II. *REPORT* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 831
 A. *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 831
 B. *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . 832
 C. *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 835
 D. *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 836
 E. *Weight and Sufficiency of the Evidence (Claims I & III)* . . . . . . . . . . . . . . . . . . 838
 1. *Weight of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 838
 2. *Sufficiency of the Evidence (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . 838
 a. *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 838
 b. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 839
 F. *Introduction of Statement to Codefendant (Claim II)* . . . . . . . . . . . . . . . . . . . . 840
 1. *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 841
 2. *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 841

 G. In–Court Identification (Claim IV) ....................................... 842
 H. Ineffective Assistance of Counsel (Claims V & VI) ....................... 843
 1. Clearly Established Law ......................................... 843
 2. Trial Counsel (Claim V) ......................................... 844
 3. Appellate Counsel (Claim VI) ................................... 844
 I. Conclusion ...................................................... 845

III. NOTICE TO PARTIES REGARDING OBJECTIONS ........................ 845

**I. RECOMMENDATION:** The Court should deny petitioner's application for the writ of habeas corpus.

**II. REPORT:**

**A. Procedural History**

1. Petitioner Calvin Cameron is a state prisoner, currently confined at the Standish Maximum Correctional Facility in Standish, Michigan.

2. On October 8, 1998, petitioner was convicted of one count of conspiracy to commit first degree murder, MICH. COMP. LAWS §§ 750.157a, 750.316, following a jury trial in the Saginaw County Circuit Court.[1] On November 10, 1998, he was sentenced to a term of life imprisonment.

3. Following his sentencing, petitioner filed a motion in the trial court for a new trial or for judgment notwithstanding the verdict, arguing that there was insufficient evidence of a conspiracy to support petitioner's conviction. The trial court denied petitioner's motion. See People v. Cameron, No. 98–015150–FC (Saginaw County, Mich., Cir. Ct. Sept. 8, 1999).

4. Petitioner thereafter appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

 I. THE JURY'S VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

 II. IT WAS ERROR FOR THE ASSISTANT PROSECUTOR TO INTRODUCE EVIDENCE OF DEFENDANT–APPELLANT'S ADVICE TO HIS CO–DEFENDANT TO REMAIN SILENT AS AN ADMISSION AGAINST HIM.

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. See People v. Whittington, No. 216045, 2001 WL 682230 (Mich.App. Apr. 20, 2001) (per curiam).

5. Petitioner sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. See People v. Cameron, 465 Mich. 882, 635 N.W.2d 315 (2001).

6. Petitioner thereafter filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500–.508, raising the following claims:

 I. THE PROSECUTION FAILED TO PROVE BEYOND A REASONABLE DOUBT THE DEFENDANT'S GUILT OF CONSPIRACY TO COMMIT FIRST DEGREE MURDER. TESTIMONY DRAWN FROM THE PROSECUTION EVIDENCE WAS ONLY PYRAMIDED ON INFERENCE

---

**1.** Petitioner was acquitted of two counts of first degree murder and one count of possessing a firearm during the commission of a felony. Petitioner was tried jointly with his codefendant, Elliott Whittington. Whitting-

ton was convicted of two counts of first degree murder, one count of conspiracy to commit murder, and one count of possessing a firearm during the commission of a felony.

AND NONE SUPPORTED PRESUMPTIONS.

II. THE JURY VERDICT WAS AGAINST THE GREAT WEIGHT OF THE EVIDENCE.

III. IT WAS ERROR FOR THE ASSISTANT PROSECUTOR TO INTRODUCE EVIDENCE OF DEFENDANT'S ADVICE TO HIS CO–DEFENDANT TO REMAIN SILENT AS AN ADMISSION AGAINST HIM.

IV. WHETHER THE IN–COURT IDENTIFICATION HAD A SUFFICIENT INDEPENDENT BASIS TO BE PRESENTED TO THE JURY.

V. DEFENDANT WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF TRIAL COUNSEL, UNDER BOTH STATE AND FEDERAL LAWS.

VI. CAUSE AND PREJUDICE. DEFENDANT CAMERON HAS ESTABLISHED AN ENTITLE[MENT] TO RELIEF FROM JUDGEMENT [sic] OF HIS CONVICTION AND SENTENCE BY DEMONSTRATING GOOD CAUSE FOR HIS FAILURE TO RAISE THE PRESENT CLAIMS ON DIRECT APPEAL OR IN A MOTION AND ACTUAL PREJUDICE FROM THE ALLEGED IRREGULARITIES IN THIS CRIMINAL PROCESS.

On April 24, 2002, the trial court denied petitioner's motion for relief from judgment, finding no merit to the claims. *See People v. Cameron*, No. 98–015150–FC–3 (Saginaw County, Mich., Cir. Ct. Apr. 24, 2002). Both the Michigan Court of Appeals and the Michigan Supreme Court denied petitioner's applications for leave to appeal in standard orders. *See People v. Cameron*, 468 Mich. 893, 661 N.W.2d 239 (2003); *People v. Cameron*, No. 241922 (Mich.App. Oct. 2, 2002).

7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on August 25, 2003. As grounds for the writ of habeas corpus, he raises the six claims that he raised in his motion for relief from judgment.

8. Respondent filed his answer on March 9, 2004. He contends that petitioner's weight of the evidence claim is not cognizable on habeas review, and that petitioner's remaining claims are barred by petitioner's procedural default in the state courts.

9. Petitioner filed a reply to respondent's answer on April 8, 2004.

B. *Factual Background Underlying Petitioner's Conviction*

The convictions of petitioner and his co-defendant arise from the December 16, 1997, shooting deaths of Earl Randolph and Joseph Haynes at the intersection of Livingston Street and Tausend Street in Saginaw Michigan. The prosecution's theory at trial was that Randolph and Haynes were involved in an illegal numbers operation, and that they were ambushed at the intersection by petitioner and Whittington and robbed of the proceeds of their illegal activities. *See* Trial Tr., Vol. II, at 121–22 (opening statement).

Saginaw Police Officer Matthew Ward was the first to arrive on the scene, at about 5:42 on the afternoon of December 16. When he and his partner arrived, Ward observed a car in the intersection of Livingston and Tausend, facing southeast. Ward saw two black males in the car, both of whom were dead from apparent gunshot wounds. He also observed broken glass on both the driver and passenger sides of the car, as well as numerous shell casings.

At the time he arrived, there were about 20–30 people standing around the intersection. *See* Trial Tr., Vol. II, at 132–42. Officer Sal Salazar, Ward's partner, similarly testified as to the scene upon their arrival. *See id.* at 148–55.

Timmy Jordan lived on Davison Street, in the vicinity of the murders. *See id.* at 162. On the afternoon of the murders, he heard rapid gunfire coming from an area near his home. He went outside, and saw a car in the intersection of Livingston and Tausend and "guys" around it. *See id.* at 166–68. He saw one of the men open the driver-side door and begin shooting into the car. *See id.* at 168–69. At least five or six shots were fired. *See id.* at 169. Jordan recognized the shooter as codefendant Whittington, whom he knew from the neighborhood and whose hair he had previously cut. *See id.* at 171–72. He saw several other people around the car at the time of the shooting. *See id.* at 173. On cross-examination, he identified one of the other individuals as Gary Donald. *See id.* at 180. Jordan also testified that he knew petitioner and did not see him at the scene of the shooting. *See id.* at 181, 183.

Donta Miller, Jordan's ten-year-old nephew, testified that he was outside on the afternoon of the murders when he heard shooting. He looked down the street and saw a car. Two people were shooting into the car, one on the driver side and one on the passenger side. *See id.* at 210–13. On cross-examination, Donta testified that he did not recognize anyone, and did not see the faces of the shooters. *See id.* at 221.

Eight-year-old Jay Scott testified that he saw a car in the intersection on the afternoon of the murders, and saw some people running from the car. *See* Trial Tr., Vol. III, at 12–13. He saw people running away from the car, one of whom was carrying a gun and a bag. *See id.* at 13–14. This man ran past him, and told him to "shut up." *See id.* at 16. Scott testified that he did not get a look at the faces of the people running away from the car. *See id.* at 17. Following the testimony of another witness, Scott was recalled by the prosecutor. At this time, Scott testified that, after exiting the courtroom following his testimony, he told his father that he did, in fact, see the person who had told him to "shut up" in the courtroom. Scott identified petitioner as this person. *See id.* at 72–73. On cross-examination, however, Scott testified that petitioner was wearing a mask over his face and that he recognized only his hands. *See id.* at 72.

Stephanie Miller, the mother of Donta Miller and Deqauvion Boyd, was living on Livingston with her mother on the day of the murders. *See id.* at 26. She heard the shooting, and went to the window to call her sons inside. Looking out the window, she saw a young man she identified as Whittington shooting into the driver's side of a car. *See id.* at 27–36. She ran outside, and went up to the car. She saw two men inside, one of whom appeared to be dead. *See id.* at 38–39. She saw a second person at the car during the shooting, but could not identify him. *See id.* at 42.

Miller's seven-year-old son, Dequavion Boyd, testified that he was playing outside with his brother Donta when he heard gunshots. *See id.* at 84–85. He looked and saw fire coming from the side of the car. He saw two people, and fire was coming from the one on the driver's side of the car. Boyd identified Whittington as the shooter. *See id.* at 86–89. He could not identify the second person at the car, and the person he saw was not present in the courtroom. *See id.* at 90–91. Boyd was then impeached with his preliminary examination testimony, in which he identified petitioner as the second person, *see id.*

at 95–100, although he testified that he did not so testify at the preliminary examination and that someone had made it up. *See id.* at 102. Boyd's trial testimony was also later impeached by the testimony of Detective Roy Walton, who testified that Boyd had identified petitioner as the person on the passenger side of the vehicle. *See* Trial Tr., Vol. V, at 37–39.

Gary Davis testified that on the afternoon of the shooting he was with several people at a friend's house near the intersection. They heard some shots, and looked around to see from where they were coming. He saw a car parked in the intersection and three people running away from the car. *See* Trial Tr., Vol. III, at 118–20. One of the people running was wearing a white coat. Davis testified that he could not identify the person wearing the white coat. However, he admitted that he gave a taped statement to the police in which he identified petitioner as the person wearing the coat, and that he had seen petitioner earlier in the day in that coat. *See id.* at 123–25. He also testified that what he had told the police was the truth. *See id.* at 123, 126. He also told the police that petitioner had, earlier in the day, said something to one of Davis's friends about committing a "187," slang for a robbery. *See id.* at 127–28.

Robert Hoard, a lieutenant with the Saginaw County Sheriff's Department, lived near the intersection and heard the shots being fired. He looked toward the scene and saw two people running from the car, but was unable to identify either of them. *See id.* at 134–38.

Edna Webb also lived in the area, and heard a volley of gunshots. She looked out the window and saw a young man in a gray sweatshirt and blue jeans standing over the driver's side of a vehicle. He opened the car door and shot into the car.

Webb identified Whittington as the shooter. *See id.* at 143–49.

Delron Ellis was visiting Demetrius Morris at Morris's home near the scene of the shooting. Also present were Davis and several other friends. While in the garage, he heard some gunshots from down the street. They went outside, and Ellis saw a car at the intersection. *See id.* at 182–83. They went down to the car and saw two men in the car who looked like they had been shot. They returned to Morris's home. Sometime later Whittington arrived. *See id.* at 183–85. Ellis testified that Whittington did not say anything to them. He was then impeached with a statement given to the police, in which he stated that Whittington had told him not to say anything to the police. However, he denied making such a statement to the police. *See id.* at 185–88. Larvas Morris, who was also at the house, testified that he saw some guys running from the car. One of them was wearing a coat which Larvas thought looked like petitioner's coat. *See id.* at 193–95. He also saw Whittington walk from the area toward which the men around the car had initially run. *See id.* at 197–98.

Saginaw Police Officer Lerone Clement was called to the scene of the shooting. He tried to interview Whittington, who was at the scene when he arrived. Petitioner told Whittington not to say anything to Officer Clement. *See id.* at 210–11. At the time, petitioner was wearing a white winter coat. *See id.* at 211. Officer Ronald Gwizdala processed the evidence at the scene. He described the scene and identified several photographs. Importantly, he testified that the windows on both sides of the car were shot and that there were bullet holes in both sides of the car. *See id.* at 230–48. However, he found no blood on petitioner's clothing and no glass in petitioner's shoes. *See* Trial Tr., Vol. IV,

at 16–18. Officer Ruben Vasquez, a canine handler, testified that he was called to the scene shortly after the shooting. A witness at the scene told officers that he had seen two men run away from the scene northbound toward a school. Officer Vasquez's dog followed the track around the school and through a neighborhood. The tracks led back to the scene. *See id.* at 34–48. Galvan Smith, a scientist employed by the Michigan State Police, tested the automobile and shell casings for fingerprints. He was unable to recover any fingerprints suitable for identification. *See id.* at 75–94.

Detective Sergeant David Chrichton of the Michigan State Police testified as a firearms expert. He recovered two bullets from inside the vehicle that were fired from either a .357 or .38 caliber handgun. He also recovered a 9mm bullet from inside the vehicle. Additional .38 or .357 caliber casings and 9mm casings were recovered outside of the vehicle. These were fired from the same two guns. He also discovered some .22 caliber ammunition at the scene, although there was no evidence that any .22 caliber bullets were fired. *See id.* at 109–40. Sergeant Mike Lively testified that he took photographs of the scene. He searched Whittington's house, but did not find anything relevant to the investigation. He was told by Stephanie Miller that Gary Donald was involved in the shootings. *See id.* at 153–58. Tani Watkins, an employee of the Michigan State Police, analyzed petitioner's clothing. She found no blood, glass particles, or other trace evidence linking petitioner to the vehicle in which the shootings occurred. *See* Trial Tr., Vol. V, at 7–12.

Eula M. Brown resided out of the state at the time of the trial, and upon the stipulation of the parties her statement to the police given after the murders was admitted. *See* Trial Tr., Vol. IV, at 107–09. In her statement, Brown indicated that she knew Randolph and Haynes, and that they were in her car at the time of the shootings. When she found out about the shootings, she immediately left town. She was scared because two weeks before the shootings, three men had come to her house demanding a money bag. She could not identify the men.[2]

Petitioner presented Michelle Lawson as a witness in his defense. Lawson testified that on the day of the murders she went to the Glenwood Market, where she played the lottery. While there, she saw petitioner. *See* Trial Tr., Vol. V, at 77–78. After, she went to a Christmas tree stand, which was closed, and returned home. While walking home, she noticed several police cars in the intersection. She estimated that from the time she left the market to the time she saw the police cars only about 3–5 minutes had passed. *See id.* at 78–79.[3]

C. *Procedural Default*

Respondent argues that petitioner's second habeas claim is barred by petitioner's failure to object to the admission of his statement to his codefendant at trial, and that petitioner's third through sixth habeas claims are barred by his procedural default because petitioner failed to raise these claims on his direct appeal. Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the fed-

---

**2.** The content of Brown's statement is not transcribed in the trial record. A copy is attached to petitioner's brief in the Michigan Court of Appeals.

**3.** Codefendant Whittington also presented several alibi witnesses.

eral question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). However, "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris*, 489 U.S. at 263, 109 S.Ct. 1038. Furthermore, "only a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review ... of a federal constitutional claim." *Ford v. Georgia*, 498 U.S. 411, 423–24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991) (quoting *James v. Kentucky*, 466 U.S. 341, 348–51, 104 S.Ct. 1830, 80 L.Ed.2d 346 (1984)); *see also, Calderon v. United States Dist. Ct. for E. Dist. of Cal.*, 96 F.3d 1126, 1129 (9th Cir.1996) (internal quotation omitted) ("For the procedural default doctrine to apply, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.").

 Even assuming, *arguendo*, that petitioner's claims are defaulted, it is nevertheless necessary to consider the merits of his claims. As noted above, petitioner can still have his defaulted claims reviewed on the merits if he can show cause for, and prejudice attributable to, his default in the state courts. Petitioner contends that his trial counsel was ineffective for failing to object to his statement at trial, and that his appellate counsel was ineffective for failing to raise his other claims on direct appeal. If petitioner's position is correct, counsel's ineffectiveness may constitute cause to excuse any procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451, 120 S.Ct. 1587, 146 L.Ed.2d 518 (2000); *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

To demonstrate that appellate counsel was ineffective petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir.1996). Given that the cause and prejudice inquiry merges with analysis of the merits of petitioner's defaulted claims, it is better to simply consider the merits of these claims, which I do below. *See Jamison v. Collins*, 100 F.Supp.2d 647, 676 (S.D.Ohio 2000); *Watkins v. Miller*, 92 F.Supp.2d 824, 832 (S.D.Ind.2000); *cf. Strickler v. Greene*, 527 U.S. 263, 282, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999) (considering merits of petitioner's habeas claims where inquiry into the merits mirrored cause and prejudice inquiry).

### D. *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326–27, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

■ "[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor,* 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *see also, Bell v. Cone,* 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002). "A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza,* 540 U.S. 12, 14, 124 S.Ct. 7, 10, 157 L.Ed.2d 263 (2003) (per curiam) (quoting *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495); *see also, Early v. Packer,* 537 U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002); *Bell,* 535 U.S. at 694, 122 S.Ct. 1843. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith,* 539 U.S. 510, 520–22, 123 S.Ct. 2527, 2534– 35, 156 L.Ed.2d 471 (2003) (quoting *Williams,* 529 U.S. at 413, 120 S.Ct. 1495); *see also, Bell,* 535 U.S. at 694, 122 S.Ct. 1843. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins,* 539 U.S. at 525–26, 123 S.Ct. at 2535 (citations

omitted); *see also, Williams,* 529 U.S. at 409, 120 S.Ct. 1495.

■ By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, " § 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams,* 529 U.S. at 412, 120 S.Ct. 1495. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade,* 538 U.S. 63, 71–72, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) (citations omitted) (quoting *Williams,* 529 U.S. at 412, 120 S.Ct. 1495).

■ Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases-indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* 537 U.S. at 8, 123 S.Ct. 362; *see also, Mitchell,* 540 U.S. at 14, 124 S.Ct. at 10. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox,* 340 F.3d 667, 671 (8th Cir.2003); *Phoenix v. Matesanz,* 233 F.3d 77, 83 n. 3 (1st Cir.2000); *Dickens v. Jones,* 203

F.Supp.2d 354, 359 (E.D.Mich.2002) (Tarnow, J.).

#### E. Weight and Sufficiency of the Evidence (Claims I & III)

In his first and third habeas claims, petitioner contends that the verdict was against the great weight of the evidence, and that the evidence produced at trial was insufficient to prove his guilt beyond a reasonable doubt. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

##### 1. Weight of the Evidence (Claim I)

 To the extent that petitioner argues that he is entitled to habeas relief because the jury's verdict was against the great weight of the evidence, his claim is not cognizable. It is well established that habeas review is not available to correct errors of state law. See Estelle v. McGuire, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("Today, we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir.1990) (a federal court on habeas review "ha[s] no authority to review a state's application of its own laws."). The federal constitution requires only that the evidence be sufficient to sustain the conviction under the standard established in Jackson v. Virginia, infra. Where the evidence is sufficient as a matter of due process, a claim that the verdict was against the weight of the evidence presents a state law issue which is not cognizable on habeas review. See Douglas v. Hendricks, 236 F.Supp.2d 412, 435–36 (D.N.J.2002); Dell v. Straub, 194 F.Supp.2d 629, 648 (E.D.Mich.2002) (Friedman, J.); Correa v. Duncan, 172 F.Supp.2d 378, 381 (E.D.N.Y.2001); cf. Tibbs v. Florida, 457 U.S. 31, 44, 102 S.Ct.

2211, 72 L.Ed.2d 652 (1982) (noting in a different context that "trial and appellate judges commonly distinguish between weight and sufficiency of the evidence."). In short, "[a] federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight of the evidence.'" Young v. Kemp, 760 F.2d 1097, 1105 (11th Cir.1985).

Thus, the only question here is whether the evidence was constitutionally sufficient to prove all of the elements of the offense for which petitioner was convicted beyond a reasonable doubt.

##### 2. Sufficiency of the Evidence (Claim III)

###### a. Clearly Established Law

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In Re Winship, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original). Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution. See Neal v. Morris, 972 F.2d 675, 678 (6th Cir.1992). In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence. See United States v. Farley, 2 F.3d 645, 650 (6th Cir.1993).

■ While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard ... has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n. 12, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977); *see also, Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. 2781; *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir.1999).

■ Petitioner was convicted under MICH. COMP. LAWS § 750. 157a, which defines conspiracy as follows: "Any person who conspires together with 1 or more persons to commit an offense prohibited by law ... is guilty of the crime of conspiracy." Petitioner was convicted under this section of conspiracy to commit first degree murder, which is prohibited by MICH. COMP. LAWS § 750.316(1). Under Michigan law, a conspiracy is "a mutual agreement or understanding, express or implied, between two or more persons to a commit a criminal act." *People v. Carter*, 415 Mich. 558, 567, 330 N.W.2d 314 (1982); *see also, People v. Cotton*, 191 Mich.App. 377, 392–93, 478 N.W.2d 681, 688 (1991). "[A] twofold specific intent is required for conviction: intent to combine with others, and intent to accomplish the illegal objective." *Carter*, 415 Mich. at 568, 330 N.W.2d 314. Although the agreement itself is the heart of the crime,

> [d]irect proof of agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of

the parties establish an agreement in fact.

Furthermore, conspiracy may be established, and frequently is established by circumstantial evidence, and may be based on inference.

*People v. Atley*, 392 Mich. 298, 311, 220 N.W.2d 465, 471 (1974) (citations omitted); *see also, Cotton*, 191 Mich.App. at 393, 478 N.W.2d at 688–89.

■ More specifically, "[t]o prove conspiracy to commit murder, it must be demonstrated that each conspirator had the requisite intent to commit the murder." *People v. Buck*, 197 Mich.App. 404, 412, 496 N.W.2d 321, 327 (1992), *rev'd in part on other grounds sub nom. People v. Holcomb*, 444 Mich. 853, 508 N.W.2d 502 (1993). "The prosecution must demonstrate that the conspirators deliberated and planned the crime with the intent to kill the victim." *Id.* at 412, 496 N.W.2d at 327.

### b. Analysis

■ Petitioner contends that the evidence was insufficient to sustain his conviction in two respects. First, he contends that the evidence was insufficient to establish that he was one of the participants in the crime at all. Second, he contends that even if the evidence was sufficient as to identity, there was insufficient evidence that he and Whittington conspired to commit the crime. The Court should conclude that petitioner is not entitled to habeas relief on these bases.

It is true that there was no physical evidence connecting petitioner to the crime. It is also true that the identification testimony was not particularly strong. Nevertheless, the identification testimony was sufficient, if believed by the jury, to support the jury's determination that petitioner was involved in the murders beyond a reasonable doubt. Jay Scott identified petitioner at trial, and although he testified

differently at trial, Deqauvion Boyd identified petitioner both to the police and at the preliminary examination. Gary Davis testified that one of the shooters was wearing a white coat similar to the one petitioner was wearing on the day of the murder, and in a taped statement to the police he identified petitioner. Larvas Morris also testified that the coat worn by one of the shooters looked like the coat worn by petitioner. Further, Davis testified that petitioner had, earlier in the day, said something to one of Davis's friends about a plan to commit a robbery. Finally, when Whittington was approached by a police officer at the scene, petitioner told him to not say anything, evidencing consciousness of guilt. *See, e.g., United States v. Gajo*, 290 F.3d 922, 930 (7th Cir.2002); *United States v. Roldan–Zapata*, 916 F.2d 795, 803–04 (2d Cir.1990).

While there were inconsistencies between the testimony of several witnesses and their earlier statements to the police or at the preliminary examination, and although there were reasons to question the reliability of some the witnesses' identifications, these matters were for the jury to resolve. It is the job of the jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at 326, 99 S.Ct. 2781; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir.1996); *see also, United States v. Bailey*, 444 U.S. 394, 414–15, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ("It is for [jurors] and not for appellate courts to say that a particular witness spoke the truth or fabricated a cock-and-bull story.").

Petitioner also contends that, even assuming that there was sufficient evidence to conclude that he was involved in the shootings, there was insufficient evidence of a conspiracy, which was the only count upon which he was convicted. However, as noted above a formal agreement is not required to establish a conspiracy, and the existence of a conspiracy may be inferred from circumstantial evidence. *See Atley*, 392 Mich. at 311, 220 N.W.2d at 471; *Cotton*, 191 Mich.App. at 393, 478 N.W.2d at 688–89.

Here, Davis testified that petitioner had mentioned a plan to commit a robbery to one of Davis's friends prior to the shootings, raising an inference that Whittington and petitioner had preplanned the robbery and murders. Further, the car in which the victims were traveling was ambushed at an intersection, suggesting preplanning between the participants. And, as noted above, petitioner told Whittington to say nothing to the police, evidencing a continuing attempt to hide the conspiracy. In these circumstances, the jury could have concluded beyond a reasonable doubt that a conspiracy existed between Whittington and petitioner. *See United States v. De-Masi*, 40 F.3d 1306, 1315 (1st Cir.1994); *Garlington v. O'Leary*, 879 F.2d 277, 281 (7th Cir.1989).[4] Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F. *Introduction of Statement to Codefendant (Claim II)*

Petitioner next contends that he was denied his Fifth Amendment right to re-

---

4. Petitioner also contends that his acquittal by the jury on the substantive murder counts amounts to a finding by the jury that he was not involved in the shooting, and that the verdicts are inconsistent. However, there were discrepancies in the testimony of the witnesses regarding who was on each side of the car and who actually fired at the car. Thus, the jury could have had a reasonable doubt regarding whether petitioner actually fired into the car, but still concluded beyond a reasonable doubt that he and Whittington conspired to rob and murder the victims.

main silent by the prosecutor's introduction of his statement to codefendant Whittington "not to say anything." Trial Tr., Vol. III, at 210–11. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 1. Clearly Established Law

The Fifth Amendment provides, in relevant part, that "[n]o person ... shall be compelled in any criminal case to be a witness against himself[.]" U.S. CONST. amend. V. This provision applies to the states via the Due Process Clause of the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The Supreme Court has determined that this provision "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt." *Griffin v. California*, 380 U.S. 609, 615, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). Likewise, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

However, subsequent cases have limited the broad reach of *Griffin*. In *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Court held that the *Griffin* prohibition on comment by the prosecutor does not apply "where ... the prosecutor's reference to the defendant's opportunity to testify is a fair response to a claim made by defendant or his counsel[.]" *Robinson*, 485 U.S. at

32, 108 S.Ct. 864; *see also, United States v. Hasting*, 461 U.S. 499, 515, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983) (Stevens, J., concurring) ("But I do not believe the protective shield of the Fifth Amendment should be converted into a sword that cuts back on the area of legitimate comment by the prosecutor on the weaknesses in the defense case."). Similarly, in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982) (per curiam), the Court limited *Doyle* to situations in which the defendant's silence was induced by the governmental assurances embodied in the *Miranda* warnings. Where such warnings have not yet been given, it does not "violate[ ] due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand." *Fletcher*, 455 U.S. at 607, 102 S.Ct. 1309.

### 2. Analysis

Petitioner's claim fails for two reasons. First, as noted above, the Supreme Court has held only that the Self–Incrimination Clause prevents a prosecutor from arguing that a defendant's post-arrest silence, induced by the *Miranda* warnings, should be held against him. Here, petitioner had not been arrested, nor had he been advised of his right to remain silent, at the time he told Whittington to say nothing.[5] Indeed, petitioner was not even questioned by the officer. Rather, it was Whittington who was being questioned. Although the Sixth Circuit has held that it violates the Fifth Amendment to use a defendant's pre-arrest silence as substan-

---

5. The fact that it was petitioner's affirmative statement, rather than his silence, which was introduced is not relevant to the resolution of this issue. If, in fact, petitioner's statement can be viewed as invoking his right to remain silent, it comes within the scope of the Fifth Amendment privilege. *See Wainwright v.*

*Greenfield*, 474 U.S. 284, 295 n. 13, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986) ("With respect to post-Miranda warning 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent as well as of a desire to remain silent until an attorney has been consulted.").

tive evidence of guilt, *see Combs v. Coyle,* 205 F.3d 269, 283 (6th Cir.2000), the Supreme Court has never so held. Thus, the introduction of this statement was not "contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), and petitioner is therefore not entitled to habeas relief. *See Mitchell v. Lafler,* No. 02–CV–74805, 2003 WL 21817616, at *4 (E.D.Mich. July 10, 2003) (use of petitioner's pre-arrest silence as substantive evidence of guilt did not entitle petitioner to habeas relief notwithstanding *Combs,* as no Supreme Court precedent prohibits use of such evidence).

■ Second, and more fundamentally, petitioner was not invoking his right to remain silent. Rather, petitioner was instructing Whittington to invoke his own right to remain silent. This statement was relevant evidence of a consciousness of guilt, and was admissible as a statement made in furtherance of the conspiracy between petitioner and Whittington. *See, e.g., United States v. Gajo,* 290 F.3d 922, 930 (7th Cir.2002); *United States v. Roldan–Zapata,* 916 F.2d 795, 803–04 (2d Cir. 1990). Even if the statement was somehow inadmissible against Whittington as impermissibly commenting on Whittington's invocation of his right to remain silent, this would not render the statement inadmissible against petitioner. The Fifth Amendment privilege is a personal privilege which adheres to the person and not to the statement. *See Couch v. United States,* 409 U.S. 322, 328, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). Thus, petitioner's statement to Whittington did not constitute an invocation by petitioner of his own right to remain silent, and its introduction at trial therefore did not violate his Fifth Amendment privilege. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### G. *In–Court identification (Claim IV)*

■ Petitioner next contends that he was denied a fair trial by the introduction of Jay Scott's in-court identification of him because no independent foundation was laid for the identification. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Petitioner contends that before an in-court identification may be used, there must be an independent source for that identification. In support of this contention, petitioner cites *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), and *Carter v. Bell,* 218 F.3d 581 (6th Cir. 2000). These cases, however, provide no support for petitioner's claim.

In *Wade,* the Supreme Court held that an accused has the right to the presence of counsel at a pre-trial line-up. *See Wade,* 388 U.S. at 228–39, 87 S.Ct. 1926. The Court also held that an in-court identification subsequent to an improper pre-trial identification is inadmissible unless it is supported by sufficient independent factors to remove the taint of the impermissible pre-trial identification. *See id.* at 241–42, 87 S.Ct. 1926. In *Neil* and *Manson,* the Court considered solely the admissibility of out-of-court, pre-trial identifications. In those cases, the Court held that suggestiveness of the identification procedures does not *per se* mandate exclusion of the identification, but that the identification may be admitted if sufficient independent factors support its reliability notwithstanding the suggestiveness of the identification procedures. *See Manson,* 432 U.S. at 109–14, 97 S.Ct. 2243; *Neil,* 409 U.S. at 198–200, 93 S.Ct. 375. Likewise, in *Carter,* the Sixth Circuit considered the admissibility

of an in-court identification which followed an impermissibly suggestive pre-trial line-up. *See Carter*, 218 F.3d at 605–06.

Here, however, there is no evidence of an impermissibly suggestive pre-trial line-up, or any pretrial identification procedure, that would have tainted Scott's in-court identification. As a matter of clearly established federal law under § 2254(d)(1), the Supreme Court has never held that an in-court identification requires an independent basis for admission in the absence of an antecedent improper pre-trial identification. Rather, "[g]enerally if identification procedures prior to trial were not unduly suggestive, questions as to the reliability of a proposed in-court identification affect only the identification's weight, not its admissibility." *United States v. Matthews*, 20 F.3d 538, 547 (2d Cir.1994). Thus, "[a]ny suggestiveness in the courtroom identification procedure is a matter for the jury to consider in weighing the persuasiveness of the witness's testimony." *Romero v. Tansy*, 46 F.3d 1024, 1032 (10th Cir.1995); *see also, McFowler v. Jaimet*, 349 F.3d 436, 450 n. 3 (7th Cir.2003). Here, Scott's in-court identification was subject to cross-examination by petitioner's counsel, and counsel argued that Scott's identification was unreliable. Thus, petitioner was not denied a fair trial by the identification, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

**H.** *Ineffective Assistance of Counsel (Claims V & VI)*

Finally, petitioner contends that both his trial and appellate attorneys provided constitutionally inadequate representation. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

**1.** *Clearly Established Law*

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id.* at 687, 104 S.Ct. 2052. These two components are mixed questions of law and fact. *Id.* at 698, 104 S.Ct. 2052. Further, "[t]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697, 104 S.Ct. 2052. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, ... that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* test, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id.* at 689, 104 S.Ct. 2052; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir.1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690, 104 S.Ct. 2052. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a

reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695, 104 S.Ct. 2052.

### 2. *Trial Counsel (Claim V)*

■ Petitioner contends that his trial counsel rendered constitutionally inadequate performance by failing to buttress the alibi testimony of Michelle Lawson, who testified that she saw petitioner in the Glenwood Market around the time of the shootings. She also testified that, while there, she purchased a lottery ticket. Petitioner contends that counsel should have sought and introduced the purchase receipt for the lottery ticket, which would have established the time Lawson was in the store and saw petitioner. Petitioner also contends that "with today's technology, and the need for greater security, it is reasonable to believe that the store used video cameras for added security precautions." Pet., at 5D. Petitioner contends that such a video would also have established the time that he was in the store. Finally, petitioner contends that counsel should have called the store owner, who could have testified as to the time that petitioner was at the store.

It is true that each of these would have provided significant evidentiary weight in support of petitioner's alibi. The problem with petitioner's claim, however, is that the existence of the evidence upon which he relies is based entirely upon speculation, and thus petitioner cannot show that counsel was deficient or that he was prejudiced by counsel's failure to locate and introduce this evidence. "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland's* standards' because 'it is very difficult to assess whether counsel's performance was deficient, and nearly impos-

sible to determine whether the petitioner was prejudiced by any deficiencies in counsel's performance.'" *Anderson v. Collins,* 18 F.3d 1208, 1221 (5th Cir.1994) (quoting *United States ex rel. Partee v. Lane,* 926 F.2d 694, 701 (7th Cir.1991)).

Here, petitioner has offered nothing to show that the store owner would have corroborated his alibi, or even that the store owner would have had any recollection of the time petitioner was at the store by the time counsel began investigating the case. Similarly, there is no evidence that the store in fact had a video surveillance system, or that a copy of the video tape, if it ever existed, still existed at the time counsel began to represent petitioner. Likewise, there is no evidence suggesting that Lawson or the store retained a copy of the receipt which counsel could have obtained. In the absence of any showing that the evidence petitioner claims would have supported his alibi actually existed, petitioner's conclusory allegations fail to demonstrate that counsel was ineffective. *See Smith v. Cockrell,* No. 3–02–CV–1985–P, 2003 WL 21649942, at *3 (N.D.Tex. Jan. 29, 2003) (counsel not ineffective for failing to obtain copies of police video tapes and radio logs of petitioner's arrest where there was no evidence in the record that these pieces of evidence ever actually existed); *Dell v. Straub,* 194 F.Supp.2d 629, 650 (E.D.Mich.2002) (Friedman, J.) (counsel not ineffective for failing to obtain evidence showing when certain packages were mailed notwithstanding petitioner's assertion that methods for determining the time were available, where petitioner offered no evidence to show that such methods did, in fact, exist). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### 3. *Appellate Counsel (Claim VI)*

■ Finally, petitioner contends that his appellate counsel was ineffective

for failing to raise his habeas claims on direct appeal, or for failing to properly raise the claims as federal constitutional claims. The Court should conclude that petitioner cannot establish that he was prejudiced by counsel's performance. In the appellate counsel context, a showing of prejudice requires a showing that petitioner's claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285–86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir.1996). As explained in this Report, all of petitioner's claims are without merit, and thus petitioner cannot show that counsel was ineffective for failing to raise them on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

I. *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioners claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III. *NOTICE TO PARTIES REGARDING OBJECTIONS:*

 The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th Cir.

1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir.1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

May 27, 2004.